1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN WILLIAM FERRIS, V,                    No.  2:14-cv-02569-AC

12              Plaintiff,

13        v.                                    ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,

15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying his applications for period of disability and disability insurance

20   benefits ("DIB") under Title II of the Social Security Act and supplemental security income under

21   Title XVI.  Plaintiff's motion for summary judgment and the Commissioner's cross-motion for

22   summary judgment are pending.  For the reasons discussed below, the court will grant the

23   Commissioner's motion for summary judgment.

24                         PROCEDURAL BACKGROUND

25        Plaintiff filed his applications for DIB and SSI on November 10, 2011.  Administrative

26   Record ("AR") 13.  Plaintiff's application was denied initially on February 14, 2012, and again

27   upon reconsideration on July 12, 2012.  Id.  On January 25, 2013, a hearing was held before

28   administrative law judge ("ALJ") Dante M. Alegre.  AR 13, 21.  Plaintiff appeared with his

                                         1

attorney, Bradford D. Myler, at the hearing.  AR 13.  Both plaintiff and Alina Sala, an impartial vocational expert, testified at the hearing.  Id.  In a decision dated April 22, 2013, the ALJ found plaintiff not disabled.  AR 21.

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.  The claimant has not engaged in substantial gainful activity since November 23, 2010, the alleged onset date.

3.  The claimant has the following severe impairment: lumbar spine degenerative disc disease with cauda equine syndrome status post discectomy in 2007 and microdiscectomy with foraminotomy in 2011.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant can lift and carry 10 pounds occasionally, 10 pounds frequently, he can stand and walk 4 hours each in an 8-hour day for no more than 30 minutes at a time. He can sit for 6 hours in an 8-hour day with position changes every 45 minutes. He can occasionally stoop and crouch. He cannot climb, balance, bend or work around hazards.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on December 4, 1980 and was 29 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, from November 23, 2010, through the date of this decision.

2

1   AR 13–21 (citations to the Code of Federal Regulations omitted).

2         Plaintiff requested review of the ALJ's decision by the Appeals Council, but it denied

3   review on August 28, 2014, leaving the ALJ's decision as the final decision of the Commissioner

4   of Social Security.  AR 1.

5   FACTUAL BACKGROUND

6         Born on December 4, 1980, plaintiff was 29 years old on the disability onset date and 31

7   years old at the time of his administrative hearing.  AR 20.  Plaintiff has not engaged in

8   substantial gainful activity since the alleged onset date.  AR 15.

9   LEGAL STANDARDS

10        The Commissioner's decision that a claimant is not disabled will be upheld if the findings

11  of fact are supported by substantial evidence in the record and the proper legal standards were

12  applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

13  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,

14  180 F.3d 1094, 1097 (9th Cir. 1999).

15        The findings of the Commissioner as to any fact, if supported by substantial evidence, are

16  conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

17  more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th

18  Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a

19  conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

20  N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute

21  substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v.

22  Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).  Although this court cannot

23  substitute its discretion for that of the Commissioner, the court nonetheless must review the

24  record as a whole, "weighing both the evidence that supports and the evidence that detracts from

25  the [Commissioner's] conclusion."  Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573,

26  576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

27        "The ALJ is responsible for determining credibility, resolving conflicts in medical

28  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

3

1   (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

2   one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v.

3   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons

4   stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not

5   rely."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d

6   871, 874 (9th Cir. 2003).  In addition, "[t]he ALJ in a social security case has an independent

7   ''duty to fully and fairly develop the record and to assure that the claimant's interests are

8   considered.''"  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

9          The court will not reverse the Commissioner's decision if it is based on harmless error,

10   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

11   ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

12   2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

13   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

14                                    ANALYSIS

15          Plaintiff seeks summary judgment on the grounds that (1) the ALJ erred in giving Dr. Ted

16   Brindle, M.D., plaintiff's treating physician, little weight; (2) the ALJ erred in finding plaintiff's

17   testimony not credible; and (3) the ALJ's finding that plaintiff could perform jobs that exist in

18   substantial numbers is not supported by substantial evidence.  The Commissioner, in turn, argues

19   that the ALJ's findings are supported by substantial evidence and are free from legal error.  For

20   the reasons discussed below the court finds that the ALJ's decision is supported by substantial

21   evidence.  Accordingly, the court will grant the Commissioner's cross-motion for summary

22   judgment and deny plaintiff's motion for summary judgment.

23   A.     Medical Expert Testimony

24          1.     Legal Standards

25          Three types of physicians may offer opinions in social security cases: "(1) those who

26   treat[ed] the claimant (treating physicians); (2) those who examine [d] but d[id] not treat the

27   claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant

28   (nonexamining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In general, the

                                        4

opinion of a treating doctor is accorded more weight than the opinion of a doctor who did not treat the claimant, and the opinion of an examining doctor is, in turn, entitled to greater weight than the opinion of a nonexamining doctor.  Id. (citations omitted); 20 C.F.R. § 404.1527(c)(1)(2).

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician.  Lester, 81 F.3d at 830 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)).  If contradicted by another doctor, the opinion of a treating or examining physician can be rejected only for "specific and legitimate reasons" that are supported by substantial evidence in the record.  Id. at 830–31 (citation and internal quotation marks omitted).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester, 81 F.3d at 831.  An ALJ, however, "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  Thomas, 278 F.3d at 957.

2.    Medical History

The earliest medical report appearing in the AR reflects that plaintiff saw Dr. Steven Amaral, MD, on January 6, 2010, complaining of acute stress.[1]  AR 254–55.  At the end of the encounter Dr. Amaral prescribed plaintiff Norco, ibuprofen, and Xanax.  Id.  At a follow up visit on January 18, 2010, plaintiff stated he had noticed some improvement in his stress but still felt anxious.  AR 251–54.  As a result, Dr. Amaral continued plaintiff's Xanax prescription while noting that he was awaiting the results of plaintiff's follow up visit with a psychologist.  Id.  Dr. Amaral also instructed plaintiff to return to regular duty at Savemart.  AR 251–52.

On May 14, 2010, plaintiff saw Dr. Cohen because he had injured his lower back and right leg at work by pulling a case down.  AR 250.  Dr. Cohen diagnosed plaintiff with a sprain in the lumbar region, scoliosis, lumbar disc disease, and acute stress, and prescribed him Lidoderm,

---

[1] The record reflects that at the time plaintiff's primary care provider (and the supervising physician) was Dr. Michael W. Cohen, MD, while his treating provider was Dr. Amaral.  AR 253–53.

1    Skelaxin, Naprosyn, and Vicodin.  Id.  During a follow up visit four days later plaintiff stated that

2    he was doing better but the cramping in his calf seemed to be getting worse.  AR 248.  Plaintiff's

3    lumbar spine was x-rayed, with normal results.  Id.  Dr. Cohen recommended that plaintiff

4    continue working light duty and instructed him to attend six physical therapy sessions.  Id.

5        The next day, May19, 2010, plaintiff returned to Dr. Cohen's office complaining of

6    increased back pain.  AR 244–47.  X-rays of plaintiff's lumbar spine revealed mild disc space

7    loss at L5-S1, but were "otherwise normal."  AR 244.  Dr. Amaral diagnosed plaintiff as suffering

8    from pain in his bilat gastrocnemius and administered Toradol, but otherwise his prescriptions

9    remained the same.  AR 245.  Dr. Amaral also recommended that plaintiff return to modified

10   duty.  Id.  Specifically, Dr. Amaral opined that plaintiff must alternate between walking, sitting,

11   and standing every 15 to 20 minutes and could not lift, push, or carry over ten pounds.  Id.

12       On May 28, 2010, plaintiff returned to Dr. Cohen's office for a follow up visit.  AR

13   242-44.  Although plaintiff stated that he was generally feeling better, his calf and foot was still

14   getting worse.  AR 243.  On June 7, 2010, plaintiff returned for a follow up examination and

15   stated that he had most of his range of motion back.  AR 240–42.  On June 14, 2010, Dr. Cohen

16   examined plaintiff once again and recommended that he return to increased modified duty,

17   opining that he could now lift, push, and carry up to forty pounds.  AR 238–39.  Plaintiff had

18   another follow up visit on June 24, 2010, that was substantially similar to his previous visits.  AR

19   236–38.  On July 9, 2010, plaintiff had another follow up visit with Dr. Cohen.  AR 234–35.

20   Dr. Cohen's notes indicate that at that time plaintiff had completed his run of physical therapy

21   appointments, and was seeing a chiropractor.  Id.  Dr. Cohen also noted that plaintiff "stis [sic]

22   comfortably, no distress."  AR 234.

23       On July 15, 2010, plaintiff visited Dr. Cohen for a follow up appointment.  AR 232–33.

24   During that appointment plaintiff stated that his back pain had increased in the last day, lower

25   back pain on his left side was recurring, and he had pain in the toes of his right foot and right leg

26   cramping.  AR 232.  At the end of his examination Dr. Cohen recommended that plaintiff return

27   to decreased modified duty.  AR 233.  On July 26, 2010, plaintiff had a follow up visit and x-rays

28   taken of his lumbar spine.  AR 229–30.  In Dr. Cohen's report from that visit he also commented

1  on July 22, 2010, MRI results, noting that plaintiff suffered from a bulging disc with "bilateral

2  facet hypertrophy." AR 230. Dr. Cohen also noted "a small central protrusion eccentric to the

3  right which abuts both S1 nerve roots." Id.

4        Plaintiff had follow up visits on August 13, 2010, September 16, 2010, October 7, 2010,

5  November 19, 2010, and December 7, 2010, but he reported little change in his condition. AR

6  218–28. During plaintiff's October 7, 2010, visit plaintiff was told he suffers from degenerative

7  disc disease, and that while no injections or surgery were recommended fusion might become

8  necessary at some point in the future. AR 223. During plaintiff's November 19, 2010, visit

9  Dr. Cohen recommended that plaintiff receive an epidural steroid injection. AR 220–21. At

10  some point before plaintiff's next visit on January 6, 2011, plaintiff received that steroid injection,

11  which he stated helped alleviate his pain. AR 215–17. The medical report from that day notes

12  that plaintiff was not working at the time. Id. On February 9, 2011, plaintiff stated that he was

13  generally feeling better since the steroid injection, but that his legs were prone to "cramping."

14  AR 213–15. On March 17, 2011, plaintiff reported feeling essentially the same as his last visit,

15  but for the first time Dr. Cohen described plaintiff's modified duty as permanent. AR 211–13.

16  Dr. Cohen also prescribed plaintiff Neurontin at the end of their visit. Id.

17        On May 25, 2011, Dr. Cohen also prescribed plaintiff Ultram and Skelaxin. AR 208–10.

18  Plaintiff indicated at that time that he had yet to begin his course of Neurontin. Id. On June 10,

19  2011, plaintiff complained that he was not getting any better. AR 206–07. Dr. Cohen

20  recommended that plaintiff get another steroid injection, which he noted had provided about three

21  months of relief the last time it was administered. Id.

22        On August 25, 2011, plaintiff visited Dr. Cohen complaining of a sudden onset of severe

23  back pain, inability to urinate, and pain in the genitalia. AR 203–05. At some point after his last

24  visit plaintiff had obtained another steroid injection. Id. Plaintiff, however, stated that the

25  injection had not helped. Id. In fact, plaintiff stated that since his injection he had been unable to

26  get an erection and experienced numbness in his buttocks, legs, and feet. Id. In light of

27  plaintiff's complaints Dr. Cohen referred him to the emergency room. Id.

28  ///

7

At the ER plaintiff saw Dr. Brindle, who noted that plaintiff had begun experiencing severe lower back pain the day before. AR 298. Plaintiff had been brushing his teeth, when he experienced a gag reflex and then severe pain, falling to the floor. Id. Dr. Brindle also noted that an MRI scan done that day revealed new L4-L5 disk herniation with impingement of the L5 nerve root as well as a larger disk herniation paracentral to the right L5-S1 resulting in lateral recess stenosis. Id. Dr. Brindle noted that plaintiff's genital numbness in particular was concerning for cauda equina syndrome. Id. With plaintiff's consent, Dr. Brindle scheduled him for a surgical laminectomy and microdiskectomy procedure from L4-S1 the next morning. Id.

There were no complications during surgery, and post-operatively Dr. Brindle diagnosed plaintiff with cauda equina syndrome secondary to large L5-S1 disc herniation. AR 295. On September 1, 2011, Dr. Brindle drafted progress notes to Dr. Kevin Luong, MD. AR 292–93. Those notes stated that since plaintiff's surgery his numbness continued, but had been improving over the past several days. Id. In addition, plaintiff reported that he continued to have pain in his lower back and right ankle area. Id. Dr. Brindle also noted that he had re-filled plaintiff's Norco prescription and advised him not to participate in any strenuous activity or heavy lifting greater than ten pounds for at least a month. Id.

On September 15, 2011, plaintiff had a follow up visit with Dr. Brindle. AR 290–91. Dr. Brindle's progress notes from that visit state plaintiff was doing better, although he continued to have some numbness in the S1 dermatomal distribution on the right and perianal area, which had been slowly improving. Id. Plaintiff also reported some intermittent pain in the low back, but no difficulty in voiding along with the ability to have an erection. Id. Dr. Brindle recommended that plaintiff refrain from any strenuous activity for four to six weeks and follow up with him in six months. Id.

On January 28, 2012, plaintiff was examined by agency physician Dr. Brandee Waite, MD. AR 336–40. Dr. Waite performed a physical examination, reviewed operative and post-operative notes from plaintiff's physicians, and noted his medical history and medications. Id. At the time of the examination Dr. Waite recorded plaintiff's medications as being (1) Norco; (2) ibuprofen; and (3) Lidoderm. AR 337. Dr. Waite noted that plaintiff had an antalgic gait,

1  moderate difficulty tandem walking, was unable to toe walk, and could heel walk with moderate

2  difficulty.  AR 337.  Based on his findings Dr. Waite opined that the following limitations were

3  likely to persist for at least twelve months: (1) maximum standing and walking for four hours

4  with not more than thirty minutes at a time; (2) no limitation on sitting but a requirement that

5  plaintiff be able to change position and stretch once every 45 minutes; (3) maximum carrying

6  capacity when lifting from waist height of ten pounds occasionally and less than ten pounds

7  frequently; and (4) no climbing, balancing, or bending with occasional stooping and crouching.

8  AR 339.  Dr. Waite also noted that plaintiff would benefit from a single point cane for long

9  distance or uneven terrain.  Id.

10       On February 21, 2012, Dr. Brindle filled out a physical impairment questionnaire.  AR

11  362–63.  That questionnaire states that plaintiff's symptoms would often interfere with the

12  attention and concentration required to perform simple work-related tasks.  AR 362.  Dr. Brindle

13  also opined that plaintiff would need to recline or lie down during a typical 8-hour workday in

14  excess of the breaks allotted most employees.  Id.  Regarding plaintiff's functional limitations,

15  Dr. Brindle opined that plaintiff could: (1) walk two blocks without rest or significant pain;

16  (2) sit, stand, and/or walk for thirty minutes at a time; (3) sit, stand, and/or walk for a total of two

17  hours in an eight hour workday; (4) frequently lift ten pounds, occasionally lift twenty pounds,

18  and never lift fifty pounds.  AR 362–63.  In addition, Dr. Brindle opined that plaintiff would

19  have to take two to three unscheduled fifteen to twenty minute breaks during a typical workday.

20  AR 362.  Dr. Brindle also stated that plaintiff was unable to work because he was recovering from

21  surgery.  AR 363.

22       3.    Analysis

23       The court finds that the ALJ did not err in discounting Dr. Brindle's opinion because he

24  articulated a specific and legitimate reason for doing so.  Finding that Dr. Brindle's medical

25  opinion was not entitled to any weight, the ALJ stated the following:

26          Treating physician, Ted Brindle, MD opined in February 2012 that
            the claimant could not work because he is recovering from surgery
27          (Ex. 6F). This opinion is given little weight. As with Dr. Cohen's
            opinion, his opinion invades upon the province of the
28

9

1
2
Commissioner. Moreover, it is inconsistent with his own treatment records showing improvement post-operatively (Ex. 2F).

3   AR 19. Plaintiff argues that the ALJ erred in giving Dr. Brindle's opinion little weight because

4   (1) Dr. Brindle's opinion that plaintiff could not work should have been considered; (2) the ALJ's

5   statement that Dr. Brindle's opinion contradicted his own medical records was unsupported by

6   any citations to the record; and (3) the ALJ neglected to consider the factors of 20 C.F.R.

7   §§ 404.1527(c)(2).

8         The court finds the ALJ's determination that Dr. Brindle's opinion was contradicted by

9   his own medical records to be a specific and legitimate reason for giving that opinion little

10  weight. Plaintiff argues that the ALJ's finding is insufficient because it does not include citations

11  to the record. The problem with this argument is that the ALJ's decision does, in fact, cite to the

12  medical record. In determining how much weight to afford the treating physician's medical

13  opinion the ALJ must consider "the '[l]ength of the treatment relationship and the frequency of

14  examination' by the treating physician." Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014).

15  In addition, "[c]ontradictions between a doctor's opinions and medical findings are a legitimate

16  reason to question credibility." DeBerry v. Comm'r of Soc. Sec. Admin., 352 F. App'x 173, 176

17  (9th Cir. 2009).

18        The ALJ's decision cites to post-operative notes from Dr. Brindle on September 15, 2011,

19  stating that three weeks after plaintiff's surgery he was recovering well, reported feeling better

20  with only intermittent pain in his low back, and no problems urinating or getting an erection. AR

21  18 (citing AR 290). Those notes come from one of only two post-operative visits plaintiff had

22  with Dr. Brindle. AR 290–94. Accordingly, the court finds Dr. Brindle's September 15, 2011,

23  report is substantial evidence supporting the ALJ's conclusion that Dr. Brindle's opinion is

24  contradicted by his own treatment records.

25        Plaintiff's remaining arguments are unconvincing. With regard to plaintiff's contention

26  that Dr. Brindle's disability opinion was entitled to consideration by the ALJ, he is correct up to a

27  point. Dr. Brindle's opinion that plaintiff is unable to work is entitled to consideration to the

28  same extent as his medical opinion generally. As the court has already stated, the ALJ did

1   articulate a specific and legitimate reason for discounting Dr. Brindle's opinion.  Plaintiff's

2   argument that the ALJ neglected to consider the factors of 20 C.F.R. §§ 404.1527(c)(2) is also

3   unconvincing.  Although the ALJ did not expressly discuss the factors listed in § 404.1527(c)(2),

4   that is no indication he did not consider them.  Plaintiff points to no authority for the proposition

5   that ALJs must discuss each and every § 404.1527(c)(2) factor in their decision, and indeed no

6   such authority exists.

7          In accordance with the foregoing, the court finds that the ALJ cited a specific and

8   legitimate reason for not giving the opinion of plaintiff's treating physician, Dr. Brindle,

9   controlling weight.

10  B.     Credibility Determination

11         1.     Legal Standards

12         "In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

13  must engage in a two-step analysis."  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); see

14  also Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  "First, the ALJ must determine

15  whether the claimant has presented objective medical evidence of an underlying impairment

16  which could reasonably be expected to produce the pain or other symptoms alleged."

17  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation

18  omitted); see also Molina, 674 F.3d at 1112; Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010)

19  ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner

20  may not discredit the claimant's testimony as to subjective symptoms merely because they are

21  unsupported by objective evidence." (internal quotation marks and citation omitted)).  "Second, if

22  the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the

23  claimant's testimony about the severity of her symptoms only by offering specific, clear and

24  convincing reasons for doing so."  Lingenfelter, 504 F.3d at 1036 (internal quotation marks and

25  citation omitted); see also Molina, 674 F.3d at 1112; Valentine v. Comm'r of Soc. Sec. Admin.,

26  574 F.3d 685, 693 (9th Cir. 2009).  "General findings are insufficient; rather, the ALJ must

27  identify what testimony is not credible and what evidence undermines the claimant's complaints."

28  ///

1    Berry, 622 F.3d at 1234 (internal quotation marks and citation omitted); see also Lester, 81 F.3d

2    at 834; Dodrill, 12 F.3d at 918.

3            2.      Analysis

4            The court finds that the ALJ did not err in determining that plaintiff lacks credibility.

5    Plaintiff argues that the ALJ's decision was error because (1) his finding that the medical record

6    did not show a consecutive 12-month period of disability was contradicted by the opinions of

7    treating and examining sources; (2) his finding that plaintiff's daily activities were inconsistent

8    with his claimed limitations was the result of a mischaracterization of plaintiff's testimony; and

9    (3) the ALJ's finding that plaintiff's pain allegations were inconsistent with the medical record

10   did not fairly give credit to those medical opinions that supported plaintiff's testimony.  The

11   ALJ's decision finds that plaintiff does suffer from an underlying impairment that could produce

12   the symptoms alleged, but that his testimony concerning the intensity and limiting effects of these

13   symptoms was not entirely credible.  AR 17.  Because the ALJ's decision does not point to any

14   evidence of malingering, it must provide specific, clear and convincing reasons for finding

15   plaintiff's testimony not to be credible.  See Vasquez, 572 F.3d at 591.

16           The first reason cited by the ALJ for finding plaintiff lacks credibility is that plaintiff's

17   pain allegations are inconsistent with the medical evidence.  AR 17.  The ALJ's decision notes

18   that plaintiff's impairments arise out of a workplace accident in "early 2010."  Id.  Despite

19   plaintiff's claims that his impairments are disabling, the record reflects he continued working

20   "with very normal examination findings" after the accident occurred.  Id.  In addition, although

21   plaintiff testified that he stopped working in November 2010, the medical record does not reflect

22   any "specific changes in his medical condition or reported worsening in November."  AR 18.

23   The ALJ also notes that plaintiff did undergo a discectomy and hemilaminectomy in August

24   2011.  Id.  The record reflects that plaintiff's surgery, however, resulted from a bout of intense

25   pain that had lasted less than a day.  Id.  That intense pain subsided for the most part as a result of

26   his surgery.  Id.

27           Plaintiff argues that this summary of the medical record is at odds with a litany of other

28   facts showing the severity of plaintiff's impairments.  ECF No. 19 at 19–20.  Plaintiff's laundry

list of notations in the medical record, however, does nothing to dispute the ALJ's observations that (1) plaintiff continued to work modified duty for months after his May 2010 accident; and (2) there is no evidence that plaintiff's condition worsened in November 2010, when he allegedly became disabled.  These observations are based on reasonable interpretations of the record, and serve to undercut plaintiff's allegations of disabling pain.  Accordingly, the ALJ's finding that the medical record undercuts plaintiff's credibility is supported by substantial evidence.

The ALJ also found that plaintiff's daily activities were inconsistent with his alleged limitations.  Evidence that a claimant engaged in certain daily activities can support an adverse credibility determination as long as (1) those activities contradicted the claimant's testimony; **or** (2) the claimant engaged in those activities for a substantial portion of the day and they involved skills transferable to the workplace.  Orn, 495 F.3d at 639.  The ALJ points to a number of plaintiff's activities as evidence that his pain allegations are not credible.  AR 18.  First, the ALJ states that plaintiff independently takes care of himself and his six-year old son.  Id.  Plaintiff both cooks meals and attends his son's sports practices and games.  Id.  In addition, the ALJ notes that although plaintiff stated he couldn't drive, he admitted to driving to the hearing.  Id.  Moreover, plaintiff reported to the consultive examiner that he was more capable than he testified.  Id.  Specifically, the ALJ seems to be referencing the examiner's note that plaintiff drives.  AR 337.  Finally, the ALJ stated that plaintiff was going to school full-time with the goal of working as a sports coach, which demonstrates that he is looking to begin working full-time.  Id.

The ALJ's discussion overstates the extent of the discrepancy between plaintiff's activities and his testimony, and includes some mischaracterizations.  For example, the ALJ states that even though plaintiff stated he could not drive, he admitting to driving to the hearing.  AR 18.  This alleged inconsistency, however, is not actually reflected in the record.  Instead, the record reflects that plaintiff testified he drove when necessary, but that doing so was painful.  AR 33.  Plaintiff drove to the hearing because he could not get another ride.  Id.  In addition, the ALJ states that plaintiff is going to school full-time with the goal of working as a sports coach, indicating that he is looking to work full-time.  AR 18.  This is again, however, not entirely accurate.  At the hearing plaintiff testified that he was taking a number of online courses, which he sometimes had

13

1    trouble completing because his pain made it difficult to concentrate.  AR 50–51.  When asked

2    what he would like to do if he ever got better, plaintiff stated that he would like to "do something

3    with sports," like become an "offensive coordinator."  AR 52.

4         Contrary to the ALJ's assertion, this does not mean that plaintiff is looking for full-time

5    work.  Plaintiff was simply responding to a hypothetical scenario posed by his own lawyer that

6    assumed he no longer suffered from his impairments.  With regard to plaintiff's remaining daily

7    activities, plaintiff testified that he did housework when necessary and attended his son's games,

8    though he often did not drive.  AR 45–46.  With regard to child care, plaintiff stated that he did

9    little other than wake his son up in the morning and sometimes prepare his meals.  AR 44–45.

10   This level of activity simply does not conflict with plaintiff's pain allegations.  Accordingly, the

11   ALJ's finding that plaintiff's pain testimony is not credible because it is contradicted by his daily

12   activities is not supported by substantial evidence.  However, this error is harmless in light of the

13   inconsistency between plaintiff's testimony and the medical records.

14        Finally, plaintiff argues that the ALJ erred by discounting the medical opinions of

15   Dr. Cohen, Dr. Branscum, and Dr. Brindle, which support his pain allegations.  ECF No. 19 at 21.

16   However, as the court has already discussed, the ALJ gave specific and legitimate reasons for

17   giving Dr. Brindle's opinion little weight.  With regard to the opinions of Dr. Branscum and

18   Dr. Cohen, the ALJ did not take those opinions into account because they were drafted prior to

19   plaintiff's August 25, 2011, surgery, which Dr. Brindle's treatment notes indicate improved

20   plaintiff's condition.  AR 19, 272.  In addition, even if the ALJ did err by discounting the

21   opinions of Dr. Branscum and Dr. Cohen the ALJ's credibility determination would still be

22   upheld because of the inconsistencies between plaintiff's testimony and the medical evidence.

23        In accordance with the foregoing, the court finds that the ALJ did not err in determining

24   plaintiff's pain testimony lacked credibility.[2]

25        _____

26        [2] Plaintiff's argument that the ALJ's step five determination is not supported by
     substantial evidence is itself based on the first two arguments already addressed.  Plaintiff argues
     the ALJ's determination that plaintiff can perform jobs that exist in substantial numbers in the
27   national economy is not supported by substantial evidence because the ALJ's hypothetical to the
     vocational expert was inaccurate.  ECF No. 19 at 21–22.  According to plaintiff, the ALJ's
28   hypothetical was inaccurate because he did not credit Dr. Brindle's medical opinion or plaintiff's

CONCLUSION

In light of the foregoing, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment, ECF No. 18, is DENIED;

2.  The Commissioner's cross-motion for summary judgment, ECF No. 26, is GRANTED; and

3.  The Clerk of the Court is directed to close this case.

DATED: March 21, 2016

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

pain allegations.  Id.  Plaintiff cannot prevail on his step five argument because the court has found that the ALJ did not err in (1) giving Dr. Brindle's opinion little weight or (2) determining plaintiff's testimony lacked credibility.